UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - X

CARTIER, A Division of RICHEMONT NORTH
AMERICA, INC.; CARTIER INTERNATIONAL,
N.V. and CARTIER CREATION STUDIO, S.A.,

                            Plaintiffs,

           - against -

GENEV  E COLLECTION, INC. d/b/a
GENEVECOLLECTIONS.COM; HOWARD GENUTH,
and JOHN DOES 2-20,

                            Defendants.

- - - - - - - - - - - - - - - - - - X

REPORT &
RECOMMENDATION

CV 07-0201 (DLI)(MDG)

GO, United States Magistrate Judge:

      Plaintiffs Cartier, a division of Richemont North America,
Inc., Cartier International, N.V., and Cartier Creation Studio,
S.A. (collectively "plaintiffs") bring this action against
defendants Geneve Collection, Inc. d/b/a/ GeneveCollections.com
("Geneve Collection"), Howard Genuth, and Does 2-20 (collectively
"defendants"), alleging trade dress infringement, unfair
competition, trademark infringement, and design patent
infringement under federal and state law.  By order dated
November 14, 2007, the Honorable Dora L. Irizarry referred to me
for report and recommendation on plaintiffs' motion for default
judgment against Geneve Collection and Genuth and the relief to
be awarded.  <u>See</u> minute order dated November 14, 2007.

FACTUAL BACKGROUND

The pertinent facts are undisputed and are set forth in the Amended Complaint ("Am. Compl.") (ct. doc. 3), the Declaration of Tal S. Benschar dated August 23, 2007 ("Benschar Decl.") (ct. doc. 14) the Declaration of Milton Springut dated July 31, 2008 ("Springut Decl.") (ct. doc. 25), and the Deposition of Howard Genuth dated June 17, 2008 ("Genuth Depo.") (ct. doc. 25 exh. C).

Since its establishment over 150 years ago, Am Compl. at ¶ 13, Cartier has been regarded as a leader in the field of fine jewelry and watch design. Am. Compl. at ¶¶ 13, 14. Cartier International, N.V., a Netherlands Antilles corporation, is the owner of all all trademarks used in the marketing of Cartier watches and jewelry designs, including the trade dress at issue in the instant case. Am. Compl. at ¶¶ 2,17. Cartier Creation Studios, S.A., a Swiss corporation, owns the design patents and copyrights for Cartier designs. Am. Compl. at ¶¶ 3, 18. These rights are licensed to Cartier, division of Richemont North America, Inc., a Delaware corporation, which operates Cartier stores throughout North America and supplies wholesale accounts with Cartier watches and jewelry. Am. Compl. at ¶¶ 1, 16-19.

At issue in the instant matter are the designs for three Cartier watches: the Tank Francaise, the Tank Americaine, and the Panthere. The trade dress of the Tank Francaise consists of a square watch face, a case consisting of thin horizontal frames and relatively thick concave vertical frames, art deco style

Roman numerals, a faceted octagon winding crown set with a cabochon stone, and a chapter ring or minute guide located between the center of the dial and the numerals on the watch face.  Am. Compl. at ¶ 23.  The combination of these elements together gives the watch a distinct overall look and commercial impression.  Am. Compl. at ¶ 23.  Prior to commencement of this action, Cartier acquired U.S. Patent No. Des. 388,322 and U.S. Pat. No. Des. 393,598 both directed to the combined watch and bracelet design of the Tank Francaise, as well as U.S. Trademark Registration No. 2,322,769 directed to the case design for the Tank Francaise.  Am. Compl. at ¶¶ 26, 27, 31.  After introducing the Tank Francaise in 1919 and extensively promoting the Tank Francaise in the United States, Cartier has achieved significant success in selling the Tank Francaise.  Am. Compl. at ¶¶ 22, 25.

The trade dress of the Tank Americaine consists of a rectangular watch face, with the longer side being vertical; the portion of the case which frames the watch face consisting of thick vertical and horizontal frames formed of the case metal, art deco style Roman numerals, a faceted octagon winding crown set with a faceted stone; and, on the watch face, a chemin-de-fer chapter ring or minute guide located between the center of the dial and the numerals, with every fifth minute indicator being thicker and bolder.  Am. Compl. at ¶ 35.  The combination of these elements together gives the watch a distinct overall look and commercial impression.  Am. Compl. at ¶ 35.  Cartier

introduced the Tank Americaine in 1919.  Am. Compl. at ¶ 22.
Cartier extensively promoted the Tank Americaine in the United
States and the Tank Americaine has achieved significant sales
success.  Am. Compl. at ¶ 37.

The Panthere trade dress consists of a square watch face
with rounded corners surrounded by a square-shaped one piece
metal frame with rounded corners and featuring eight screw tips
set around the bezel at 1, 2, 4, 5, 7, 8, 10, and 11 o'clock; an
outer metal frame composed of four segments, with two rectangular
segments horizontal to the frame, and the other two pieces of the
outer frame, which are vertical relative to the case, extending
horizontally around the corner of the bezel and then vertically
away from the case at each corner past the horizontal rectangular
piece and ending in a rounded end; a faceted octagon winding
crown set with a cabochon stone; art deco style Roman numerals; a
chemin-de-fer chapter ring or minute guide located between the
center of the dial and the numerals, with every fifth minute
indication being thicker and bolder; and a watch band consisting
of five staggered rows of interlocking rectangular metal links.
Am. Compl. at ¶ 41.  The combination of these elements together
gives the watch a distinct overall look and commercial
impression.  Am. Compl. at ¶ 41.  Cartier introduced the Panthere
in 1983.  Am. Compl. at ¶ 39.  Cartier extensively promoted the
Panthere in the United States and the Panthere has achieved
significant sales success.  Am. Compl. at ¶ 42.

Cartier has invested millions of dollars over the years in marketing, promoting and advertising the fine quality of its jewelry and watches, including the trademarks, trade dress and designs set forth above. Am. Compl. at ¶ 46. Cartier has established a worldwide reputation for uniformly high quality watches in connection with these trade dresses. Am. Compl. at ¶ 47. As a result, these watches and designs have acquired outstanding renown and goodwill in the United States and around the world. Am. Compl. at ¶ 47.

Defendant Geneve Collection is a New York corporation, having its principal office and place of business at 2113 59th Street, Brooklyn, New York. Am. Compl. at ¶ 5. Defendant Genuth is a managing agent of Geneve Collection. Am. Compl. at ¶ 6. Defendants operated the website www.GeneveCollections.com for the purpose of selling watches. Genuth Depo. 24:18-27:13. On the website, defendants offered for sale watches that appeared nearly identical, but were of inferior quality, to the Tank Francaise, Tank Americaine, and the Panthere. Am. Compl. at ¶¶ 48, 50. Defendants have not sought nor received a license from Cartier, division of Richemont North America, Inc., Cartier International, N.V., or Cartier Creation Studio, S.A. for any purpose whatsoever. Am. Compl. at ¶ 21.

By letter dated June 27, 2006 sent to defendants, plaintiffs advised that it had learned that defendants were offering for sale on their website watches which were confusingly similar to

one or more of the Cartier dress trade.  Springut Decl. exhibit
H.  Plaintiffs demanded that defendants immediately discontinue
the sale of such merchandise.  Springut Decl. exhibit H.
Plaintiffs again sent letters dates August 10, 2006 and November
2, 2006 to defendants stating that there had been no response to
their previous correspondence and that infringing watches
remained on defendants' website.  Springut Decl. exhibits I, J.

On January 16, 2007, plaintiffs commenced this action
seeking injunctive relief, attorneys' fees, and costs for trade
dress infringement, unfair competition, trademark infringement,
and design patent infringement under federal and state law.  See
ct. doc. 1.  After plaintiffs served defendants, defendants
appeared through counsel and entered a stipulation wherein they
waived service and agreed to file an answer by May 7, 2007.  See
ct. doc. 4; Benschar Decl. at ¶ 3.  The stipulation also provided
that the parties would commence discovery in an attempt to
expedite the case and reach a settlement.  See id.  The
defendants neither produced any discovery nor filed an answer.
Benschar Decl. at ¶ 4.  Subsequently, defendants' counsel moved
to withdraw as counsel due to his clients' failure to cooperate
and to sign a retainer agreement.  See ct. doc. 7.  Granting the
motion, this court extended the time for defendants to answer to
June 29, 2007.  See ct. doc. 8.  Defendants never answered.

On August 23, 2007, plaintiffs filed a motion for default
judgment.  See ct. doc. 11.  By electronic order filed on

November 14, 2007, Judge Irizarry directed entry of default against the defendants and referred the questions of damages to me for report and recommendation. After conducting discovery, plaintiffs moved for a permanent injunction and attorneys' fees. See ct. doc. 23. Defendants have not filed any response.

## DISCUSSION

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except for those relating to damages. Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). Only "in very narrow, exceptional circumstances" may a court find an allegation not "well pleaded." TWA, Inc. v. Hughes, 449 F.2d 51, 63 (2d Cir. 1971), rev'd on other grounds, 409 U.S. 363 (1973), quoted in Niles v. Palmer, No. 97 CIV. 7573, 1999 WL 1419042, at *5 (S.D.N.Y. Oct. 22, 1999).

A default also effectively constitutes an admission that damages were proximately caused by the defaulting party's conduct; that is, the acts pleaded in the complaint violated the laws upon which the claim is based and caused injuries as alleged. See Greyhound, 973 F.2d at 159. The movant need prove "only that the compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." Id.

The court must ensure that there is a reasonable basis for

the damages specified in a default judgment.  Actual damages or statutory damages may be assessed.  In determining damages not susceptible to simple mathematical calculation, Fed. R. Civ. P. 55(b)(2) gives a court the discretion to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence.  <u>Action S.A. v. Marc Rich & Co., Inc.</u>, 951 F.2d 504, 508 (2d Cir. 1991).  The moving party is entitled to all reasonable inferences from the evidence it offers.  <u>Au Bon Pain</u>, 653 F.2d at 65.

However, "[e]ven after [a] default, . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law."  <u>Leider v. Ralfe</u>, No. 01 Civ. 3137, 2004 WL 1773330, at *7 (S.D.N.Y. July 30, 2004) (quoting <u>In re Indus. Diamonds Antitrust Litig.</u>, 119 F. Supp. 2d 418, 420 (S.D.N.Y. 2000)).

I.   <u>Liability of Defendants</u>

A.   *Trade Dress Infringement*

A product's trade dress encompasses the overall design and appearance that make a product identifiable to consumers.  <u>Nora Beverages, Inc. v. Perrier Group of Am., Inc.</u>, 269 F.3d 114, 118 (2d Cir. 2001).  Section 43(a) of the Lanham Act protects trade dress.  <u>Id.</u>  To prevail on a trade dress infringement claim, the plaintiff must prove that "(1) the mark is distinctive as to the

source of the good, and (2) there is a likelihood of confusion between its good and defendant's." <u>Yurman Design, Inc. v. PAJ, Inc.</u>, 262 F.3d 101, 115 (2d Cir. 2001).

The plaintiff may prove distinctiveness by "showing *either* that the 'intrinsic nature' of the mark serves to identify a particular source . . . *or* that in the minds of the public, the primary significance of the mark is to identify the source of the product rather than the product itself." <u>Id.</u> (quotation and alterations omitted). The product design plaintiff must always make the second, more difficult showing, termed "secondary meaning." <u>Id.</u> "The factors relevant to secondary meaning include advertising expenditures, consumer studies, sales, competitors' attempts to plagiarize the mark, and length and exclusivity of the mark's use." <u>Friesland Brands</u>, 228 F. Supp. 2d 399, 405 (S.D.N.Y. 2002) (quoting <u>Arrow Fastener Co., Inc. v. Stanley Works</u>, 59 F.3d 384, 393 (2d Cir. 1995)). No single factor is determinative and not every factor must be shown. <u>Centaur Commc'ns, Ltd. v. A/S/M Commc'ns, Inc.</u>, 830 F.2d 1217, 1222 (2d Cir. 1987). Additionally, if the trade dress is not registered, the plaintiff must also prove that the trade dress is not functional. 15 U.S.C. § 1125(a)(3). "[A] product feature is functional, and cannot serve as a trademark, if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." <u>Yurman</u>, 262 F.3d at 116 (quoting <u>TrafFix Devices, Inc. v. Mktg. Displays, Inc.</u>, 532 U.S. 23, 32

(2001)).  In cases involving an aesthetic feature, the dress is functional if the right to use it exclusively would put competitors at a significant non-reputation-related disadvantage."  Id. (quoting TrafFix Devices, 532 U.S. at 32).

This court finds that plaintiffs' allegations adequately establish that the trade dress of the Tank Francaise, the Tank Americaine, and the Panthere have acquired distinctiveness through their length of use, advertisement, and promotion throughout the world and the United States.  See Am. Compl. at ¶¶ 22, 25, 37, 39, 42, 46-47.  These allegations also establish that the trade dress of these watches is not functional.  See Am. Compl. at ¶¶ 23, 35, 41.  In fact, Judge Motley found in Cartier, Inc. v. Four Star Jewelry Creations, Inc., 348 F. Supp. 2d 217, 240-41 (S.D.N.Y. 2004), that the trade dress of these three lines of watches are both distinctive and not functional.

The second half of the proof required of plaintiffs in order to prevail in an action for trade dress infringement is a showing of likelihood of confusion between their good and that of defendants.  Yurman, 262 F.3d at 115.  In determining whether there is a likelihood of confusion, the court should consider the following factors: (a) the strength of the plaintiffs' mark,(b) the degree of similarity between the plaintiffs' and defendants' marks, (c) the proximity of the products, (d) the likelihood that either owner will bridge the gap, using the mark on products closer to the other's area of commerce, (e) the sophistication of

the buyers, (f) the quality of the defendants' product, (g)
actual confusion, and (h) good or bad faith. <u>Tcpip Holding Co.,
Inc. v. Haar Commc'ns Inc.</u>, 244 F.3d 88, 100 (2d Cir. 2001).
This list is nonexclusive and no one factor is determinative.
<u>Id.</u> The court "should focus on the ultimate question of whether
consumers are likely to be confused." <u>Tactica Int'l v. Atl.
Horizon Int'l, Inc.</u>, 154 F. Supp. 2d 586, 602 (S.D.N.Y. 2001).

Plaintiffs' allegations demonstrate that defendants have
infringed plaintiffs' trade dress by copying and offering for
sale merchandise appearing confusingly similar to plaintiffs'
products. <u>See</u> Am. Compl. at ¶¶ 48, 50. This court has also
examined the pictures of the watches offered for sale by
defendants which were identified by defendant Genuth at his post
default deposition. <u>See</u> Springut Aff. at ¶ 16, ex. D. Comparing
these pictures with both the descriptions of the three trade
dresses at issue and pictures of the watches in the amended
complaint, this court finds a striking resemblance between the
watches offered by defendants and the Tank Francaise, Tank
Americaine, and Panthere. <u>Compare</u> Am. Compl. at ¶¶ 23-24 with
Springut Aff. ex. D, third, fourth, seventh, and eighth pages;
Am. Compl. at ¶¶ 35-37 with Springut Aff. ex. D, first, second,
fifth, sixth, ninth, and tenth pages; Am. Compl. at ¶¶ 40-43 with
Springut Aff. ex. D, eleventh and twelfth pages. Specifically,
there are similarities in the shape of the watch faces, the style
of the Roman numerals used, the angle of the numerals to the

minute hand, the shapes of the elements of the frame encircling the watch faces, and the relative proportions of the vertical and horizontal elements of the frames between the defendants' watches and the protected trade dresses of plaintiffs' watches.  In addition, there are other similar elements as to certain of the watches, such as the shape and proportions of the links in the watch band and the shape and relative proportion of an outer frame or bezel (Panthere), the use of a faceted winding crown and minute guide (Tank Francaise and Tank Americaine), and the use of chemin-de-fer chapter ring or minute guide (Tank Americaine).

B.    *Trademark Infringement*

Plaintiffs assert that defendants have willfully and deliberately infringed Cartier's Tank Francaise registered trademark.  Am. Compl. at ¶ 61.  The Lanham Act prohibits the use in commerce, without consent, of any "registered mark in connection with the sale, offering of sale, distribution, or advertising of any goods," in a way that "is likely to cause confusion."  15 U.S.C. § 1114(1)(a).  It also forbids the infringement of unregistered common law trademarks.  See Time, Inc. v. Petersen Publ'g Co. LLC, 173 F.3d 113, 117 (2d Cir. 1999); Genesee Brewing Co. v. Stroh Brewing Co., 124 F.3d 137, 142 (2d Cir. 1997); Banff, Ltd. v. Federated Dep't Stores, Inc., 841 F.2d 486, 489 (2d Cir. 1988);  15 U.S.C. § 1125(a)(1).  To prevail on a trademark infringement claim under either provision,

plaintiff must demonstrate that "it has a valid mark entitled to protection and that the defendant's use of it is likely to cause confusion." Time, 173 F.3d at 117; Genesee Brewing, 124 F.3d at 142.

A mark is automatically entitled to protection under the Lanham Act when it is an "inherently distinctive" mark, as opposed to a "merely descriptive" mark. See 15 U.S.C. § 1052(e), (f); Time, 173 F.3d at 117; Genesee Brewing, 124 F.3d at 143; see also Two Pesos v. Taco Cabana, 505 U.S. 763, 768-69 (1992). A descriptive mark qualifies for protection only if it has acquired secondary meaning, i.e, consumers have come to associate it with the user of the mark. See 15 U.S.C. § 1052(e), (f); Time, 173 F.3d at 117; Genesee Brewing, 124 F.3d at 143; see also Two Pesos, 505 U.S. at 768-69. Registration of a mark is prima facie evidence of the validity of the mark, the registrant's ownership of the mark and the registrant's exclusive right to use the mark in commerce in connection with the goods or services specified in the registration certificate. See 15 U.S.C. §§ 1115(b), 1057(b).

Plaintiffs own U.S. Patent No. Des. 388,322 and U.S. Pat. No. Des. 393,598 directed to the combined watch and bracelet design of the Tank Francaise, as well as the registered trademark of Tank Francaise. Such registration establishes the validity of the tradedress of the Tank Francaise and plaintiffs' ownership and exclusive right to use that mark. Id. In addition,

plaintiffs' allegations establish that the designs of the Tank
Francaise, Tank Americaine, and Panthere have acquired
distinctiveness through their length of use, advertisement, and
promotion throughout the world and the United States. <u>See</u> Am.
Compl. at ¶¶ 22, 25, 46-47. Plaintiffs' also sufficiently
demonstrate that defendants have infringed plaintiffs' registered
and common law trademarks by copying and offering for sale
merchandise bearing designs that are confusing similar to
plaintiffs' marks. <u>See</u> Am. Compl. at ¶¶ 48, 50.

<u>Injunctive Relief</u>

Plaintiffs seek a permanent injunction prohibiting
defendants from (1) manufacturing, importing, distributing,
shipping, advertising, marketing, promoting, selling, or offering
for sale any merchandise bearing the Cartier trade dress designs;
(2) representing, suggesting in any fashion to any third party,
or performing any act which might give rise to a belief that
defendants or their goods are authorized or sponsored by
plaintiffs; or (3) passing off, inducing, or enabling others to
sell or pass off any goods as products produced by plaintiffs
which are not in fact genuine Cartier goods or are not produced
under the control and supervision of plaintiffs and approved by
plaintiffs. <u>See</u> ct. doc. 23. "A court may 'issue an injunction
on a motion for default judgment provided that the moving party
shows that (1) it is entitled to injunctive relief under the

applicable statute and (2) it meets the prerequisites for the
issuance of an injunction.'"  <u>Dunkin' Donuts Inc. v. Peter
Romanofsky, Inc.</u>, No. CV-05-3200, 2006 WL 2433127, at *6
(E.D.N.Y. Aug. 8, 2006) (quoting <u>King v. Nelco Indus., Inc.</u>, No.
96-CV-4177, 1996 WL 629564, at *1 (E.D.N.Y. Oct. 23, 1996)).
Plaintiffs satisfy both prerequisites.

Under section 34 of the Lanham Act, the court has the "power
to grant injunctions, according to the principles of equity and
upon such terms as the court may deem reasonable."  15 U.S.C. §
1116(a).  To obtain a permanent injunction, the movant must
establish that 1) absent injunctive relief, it will suffer
irreparable harm, and 2) actual success on the merits.  <u>Guishan,
Inc. v. Scooby Scraps, Inc.</u>, No. 08-cv-2684, 2008 U.S. Dist.
LEXIS 76585, at *4 (E.D.N.Y. Sept. 16, 2008); <u>Cartier, Inc. v.
Four Star Jewelry Creations, Inc.</u>, 348 F. Supp. 2d 217, 240
(S.D.N.Y. 2004).  Generally, the movant must also show the threat
of a continuing violation in order to obtain injunctive relief.
<u>See</u> <u>Boisson v. Banian Ltd.</u>, 280 F. Supp. 2d 10, 15 (E.D.N.Y.
2003).  As discussed, plaintiffs have demonstrated defendants'
liability, and thus, actual success on the merits.  Where, as
here, plaintiffs have established a <u>prima facie</u> case of
infringement, irreparable harm is presumed.  <u>See</u> <u>Hasbro, Inc. v.
Lanard Toys, Ltd.</u>, 858 F.2d 70, 73 (2d Cir. 1988).  Moreover, it
is likely that in the absence of an injunction defendants will
continue to infringe plaintiffs' trademark interests,

particularly in light of defendants' intentional copying of
plaintiffs' watch designs even after Cartier sent notices of
infringement to defendants concerning their activities.  <u>See</u> Am.
Compl. at ¶ 49; Springut Decl. ex. H-J.  Since plaintiffs have
met the requisite showing to justify issuance of a permanent
injunction, I recommend that plaintiffs' request for injunctive
relief against defendants be granted.

<u>Attorneys' Fees and Costs</u>

Plaintiffs also seek $37,119.50 in attorneys' fees and
$768.00 in costs.  <u>See</u> Springut Decl. at ¶¶ 2, 14.

Both Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a),
and Section 235 of the Patent Act, 35 U.S.C. § 285, allow a
prevailing party to recover reasonable attorneys' fees in
exceptional cases.  A finding of willful infringement is
sufficient for a court to find the case exceptional for the award
of attorneys' fees.  <u>See</u> <u>Bambu Sales v. Ozak Trading</u>, 58 F.3d
849, 854 (2d Cir. 1995); <u>Golight, Inc. v. Wal-Mart Stores, Inc.</u>,
355 F.3d 1327, 1339-40 (Fed. Cir. 2004).  Additionally, the
Lanham Act provides for the award of costs to a prevailing
plaintiff in all cases.  15 U.S.C. § 1117(a).

Willfulness is determined by an inquiry into whether the
defendant acted with a reasonable belief that its actions would
avoid infringement.  <u>See</u> <u>Golight</u>, 355 F.3d at 1339.  "When a
defendant has defaulted, then by virtue of its default it is

deemed to be a willful infringer." Gucci Am., Inc. v.
Myreplicahandbag.com, No. 07 Civ. 2438, 2008 U.S. Dist. LEXIS
49480 (S.D.N.Y. Jan. 25, 2008) (citing Tiffany (NJ), Inc. v.
Luban, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003)).

In addition, plaintiffs allege that defendants intentionally
copied plaintiffs' watch designs all the time knowing that their
actions were in contravention of plaintiffs' rights. Am. Compl.
at ¶ 49. The plaintiffs sent the defendants three warning
letters dated June 27, 2006, August 10, 2006, and November 2,
2006. Springut Decl. exs. H, I, J. Defendant Howard Genuth, who
is an officer or managing agent of defendant Geneve Collection,
Inc., admitted to having received the letters. See transcript of
deposition of Howard Genuth conducted June 17, 2008 ("Genuth
Tr.") attached as ex. C of Springut Decl. at 41-42, 45-47; Am.
Compl. at ¶ 6. Although he claimed that he gave instructions
after receiving the first letter to have the infringing watches
taken off Geneve Collection's website, no changes were made until
after receipt of the second letter. Genuth Tr. at 41-42, 44-45.
Tellingly, Mr. Genuth was employed in 2002 for two or three years
by Globe Jewelry, Inc., one of the defendants sued in Cartier,
Inc. v. Four Star Jewerly Creations, Inc., discussed above. See
Genuth Tr. at 14, 19. Michael Genuth, a principal of Globe
Jewelry, Inc. and the a defendant sued in Four Star, is Howard
Genuth's father. Genuth Tr. at 14-15. Howard Genuth admitted
that he obtained some of the watches sold by Geneve Collection

-17-

and from his father and went with his father to court once.  Id.
at 16, 33-24.  Although Howard Genuth denies being aware of the
Four Star litigation, this court finds, drawing inferences in
favor of plaintiffs' claims, that Howard Genuth was aware of the
Four Star litigation and the claims raised.

Under these circumstances, I find that the defendants'
willfully infringed plaintiffs' trademarks.  Accordingly,
plaintiffs are entitled to an award of attorneys' fees and costs.

In determining reasonable attorneys' fees, courts use the
lodestar method by examining "the number of hours reasonably
expended on the litigation multiplied by a reasonable hourly
rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); see Arbor
Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,
522 F.3d 182, 188 (2d Cir. 2008).  Reasonable hourly rates are
determined by examining the rates "prevailing in the community
for similar services of lawyers of reasonably comparable skill,
experience, and reputation." Cruz v. Local Union No. 3 of the
IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994) (quoting Blum v. Stenson,
465 U.S. 886, 896 n.11 (1984)).  Although attorney rates are
generally evaluated in comparison to those charged in the
district in which the court sits, Luciano v. Olsten Corp., 109
F.3d 111, 115 (2d Cir. 1997), courts in the Eastern District of
New York often use rates awarded across the river, in the
Southern District of New York, as a basis for comparison.  See
Nicholson v. Williams, No. 00 CV 2229, 2004 WL 4780498, at *10-11

-18-

(E.D.N.Y. April 5, 2004); <u>Tokyo Electron Arizona, Inc. v.</u>
<u>Discreet Indus. Corp.</u>, 215 F.R.D. 60, 63 (E.D.N.Y. 2003).

In reviewing a fee application, the district court must
examine the particular hours expended by counsel with a view to
the value of the work product of the specific expenditures to the
client's case.  <u>See</u> <u>Lunday v. City of Albany</u>, 42 F.3d 131, 133
(2d Cir. 1994); <u>DiFilippo v. Morizio</u>, 759 F.2d 231, 235-36 (2d
Cir. 1985).  If any expenditure of time was unreasonable, the
court should exclude these hours from the lodestar calculation.
<u>See</u> <u>Hensley</u>, 461 U.S. at 434; <u>Lunday</u>, 42 F.3d at 133.  The court
should thus exclude "excessive, redundant or otherwise
unnecessary hours, as well as hours dedicated to severable
unsuccessful claims."  <u>Quaratino v. Tiffany & Co.</u>, 166 F.3d 422,
425 (2d Cir. 1999).  A party seeking attorneys' fees bears the
burden of supporting its claim of hours expended by accurate,
detailed, and contemporaneous time records.  <u>New York State Ass'n</u>
<u>for Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136, 1147-48 (2d
Cir. 1983).  In lieu of contemporaneous time records, an
applicant may submit summaries accompanied by affidavits stating
that the summaries are accurate and based on contemporaneous
records.  <u>Cruz</u>, 34 F.3d at 1160.  These records should specify,
for each attorney, the date, hours expended, and the nature of
work.  <u>Carey</u>, 711 F.2d at 1148.  It is not required that counsel
describe in great detail how the time was spent, rather it is
sufficient to identify the general subject matter of time

-19-

expenditures.  <u>Perdue v. City Univ. of New York</u>, 13 F. Supp. 2d
326, 345 (E.D.N.Y. 1998).

Plaintiffs seek attorneys' fees of $37,119.50.  Plaintiffs'
counsel's affidavit sets forth the hourly billing rates for the
attorneys and paralegals who worked on the case.  <u>See</u> Springut
Decl. ex. A.  Plaintiffs counsel also provided summaries of
contemporaneous time records which describe, by attorney or
paralegal, the nature of the work done, the hours expended, and
the date on which the work was done.  <u>See</u> Springut Decl. ex. A.

Plaintiffs' counsel have submitted time records for time
spent on this case from January 8, 2007 through July 25, 2008 by
the following individuals:  Milton Springut, a partner who has
been litigating intellectual property cases for more than thirty
years and wrote a chapter entitled "Defensive Measures Against
Counterfeiting" in a series first published in 1995 and updated
in 2003 by Matthew Bender entitled "Intellectual Property
Counseling and Litigation;" Tal S. Benshcar, a partner as of
January 1, 2008 in his eleventh year of practice who has
practiced intellectual property litigation for the past eight
years and co-authored an article entitled "Proving Willfulness in
Trademark Counterfeiting Cases" published in the Fall 2003
edition of Columbia Journal of Law and the Arts; Shadaia M.
Gooden, an associate in her third year of intellectual property
practice; Heikki Virks-Lee, a paralegal; and Ryan D. Francis, a
paralegal.  Springut Decl. at 3-4.  For work done prior to

February 1, 2007, plaintiffs request $515 per hour for Mr.
Springut, $400 per hour for Mr. Benschar, and $130 per hour for
Ms. Virks-Lee.[1]  Springut Decl. ex. A.  Between February 1, 2007
and February 1, 2008, plaintiffs request $550 per hour for Mr.
Springut, $440 per hour for Mr. Benschar, and $150 per hour Ms.
Virks-Lee.  Springut Decl. ex. A.  After February 1, 2008,
plaintiffs request $595 per hour for Mr. Springut, $520 per hour
for Mr. Benschar, $375 per hour for Ms. Gooden, and $225 per hour
for Mr. Francis.  Springut Decl. ex. A.

The actual fee arrangement between a party and its counsel
is relevant evidence of what constitutes a reasonable fee.
Pugach ex rel. United States v. M&T Mortgage Corp., 564 F. Supp.
2d 153, 157 (E.D.N.Y. 2008). "Nonetheless, courts have
acknowledged that what is 'reasonable' for purposes of a fee
award to be paid by the losing party to the prevailing party in a
litigation is not the same as the reasonableness of a bill that a
law firm might present to its own paying client." Id. (quotation
omitted).  Here, the fees have actually been paid by the
plaintiffs, whom this court finds to be sophisticated clients.

Based on my general knowledge of plaintiffs' counsel's
practice, their work on intellectual property cases, and my
knowledge of prevailing rates for such matters in New York, in
addition to the fact that plaintiffs have already paid the

---

[1]  Hourly rates are revised each year effective February
1st.  Springut Decl. at 2.

claimed fees in this case, I find that the rates sought for Mr.
Springut, Mr. Benschar, Ms. Gooden, and Ms. Virks-Lee are
reasonable.  See Gucci Am. Inc. v. Duty Free Apparel, Ltd., 315
F. Supp. 2d 511, 525 (S.D.N.Y. 2004) (finding reasonable billing
rates of $425 per hour for partner and $290 per hour for
associate, where both attorneys were experts in trademark law and
had published articles on the topics at issue in the litigation);
Video-Cinema Films, Inc. v. Cable News Network, Inc., Nos. 98
Civ. 7128, et al., 2004 WL 213032, at *3 (S.D.N.Y. Feb. 3, 2004)
(noting that in 2000, median billing rate for New York City
intellectual property law firms was $370 per hour for partners
and $250 per hour for associates); Stevens v. Aeonian Press,
Inc., No. 00 Civ. 6330, 2002 WL 31387224, at *5 (S.D.N.Y. Oct.
23, 2002) (approving rate for partner time charged at a maximum
of $460 per hour, associate time charged at between $215 and $330
per hour, with an average of approximately $284 per hour, and
paralegal time billed at $135 per hour); Yurman Designs, 125 F.
Supp. at 58 (approving average billing rate of $520.69 per hour
for partners, $278 per hour for associates, and $162 per hour for
paralegals), aff'd, 29 Fed. App'x 46 (2d Cir. 2002).  However, I
find that the rates sought for Mr. Francis are far above the
range of rates charged for paralegals in intellectual property
cases in New York City.  I note that the rate sought for Mr.
Francis is also $95 per hour more than that sought for Ms. Virks-
Lee with no indication in the submissions as to either

paralegal's experience. I recommend reducing the rate claimed by
Mr. Francis to $162 per hour, a paralegal rate which was approved
by the court in <u>Yurman Designs, Inc. v. PAJ, Inc.</u>. <u>Id.</u> This
would reduce the overall fee claimed by $31.50.

Plaintiffs' counsel submitted summaries of contemporaneous
records of the time spent by the attorneys and paralegals on this
case. Included in the entries are seemingly repetitive entries
for Mr. Benschar. A one hour entry on July 7, 2008 for Mr.
Benschar reads "Outline submission to Court on remedies; review
same with associate; related research." <u>See</u> Springut Decl. ex.
A. There is a second entry on that date for Mr. Benschar, also
an hour long, which bears the same exact description. <u>See</u>
Springut Decl. ex. A. This repetition occurs again on July 9,
2008. On that date there is a one hour entry for Mr. Benschar
that reads "Review transcript of H. Genuth; review issues
regarding submission to Court." <u>See</u> Springut Decl. ex. A. A
second entry on that date for Mr. Benschar, also an hour long,
bears that same exact description. <u>See</u> Springut Decl. ex. A. I
find that these entries are redundant and recommend reducing the
time claimed by Mr. Benschar by two hours, the amount of time
spent on the redundant entries. <u>See</u> <u>Quaratino</u>, 166 F.3d at 425.
This would reduce the overall fee by $1040.00.

I also recommend that the court not award fees for the time
spent in connection with plaintiffs' unsuccessful motion for
reconsideration of an order denying plaintiffs' application for

leave to serve subpoenas upon the defendants by certified mail.
In the original order dated February 19, 2009, I stated that
plaintiffs had not provided sufficient facts to support their
claim that the defendants were avoiding service.  See ct. doc. 19
at 2.  In their motion for reconsideration, plaintiffs raised
legal arguments which this court rejected.  See ct. doc. 21.
Therefore, I recommend that the court not award fees of $3845.00
for time expended between March 4, 2008 and March 11, 2008 in
making such a motion.

Plaintiffs seek $768.00 in costs.  See Springut Decl. at ¶
14. Plaintiffs counsel provided a list of costs incurred in the
case along with copies of the receipts for those costs.  See
Springut Decl. at 5, ex. A.  Plaintiffs seek $350 for a filing
fee and $418 for a deposition transcript used in support of this
motion.  See Springut Decl. at 5, ex. A.  Reasonable and
identifiable out-of-pocket disbursements ordinarily charged to
clients are recoverable.  See LeBlanc-Sternberg v. Fletcher, 143
F.3d 748, 763 (2d Cir. 1998).  Plaintiffs' request for court
filing fees and transcription services are recoverable litigation
costs.  See Aiello v. Town of Brookhaven, No. 94-CV-2622, 2005 WL
1397202, at *8 (E.D.N.Y. June 13, 2005) (awarding transcription
fees); New Leadership Comm. v. Davidson, 23 F. Supp. 2d 301, 305
(E.D.N.Y. 1998) (awarding filing fee).  Accordingly, I recommend
awarding plaintiffs the full amount of costs requested.

In sum, I recommend awarding plaintiffs $32,203.00 for attorneys' fees and $768.00 for costs.

<u>CONCLUSION</u>

For the foregoing reasons, I recommend that plaintiffs be awarded judgment against defendants, jointly and severally, in the amount of $32,203.00 in attorneys' fees and $768.00 in costs, for a total judgment of $32,971.00. I further recommend that the court issue a permanent injunction in the form submitted by plaintiffs (ct. doc. 23 attachment 1) except for the amount of the fee award which prohibits defendants from (1) manufacturing, importing, distributing, shipping, advertising, marketing, promoting, selling, or offering for sale any merchandise bearing the Cartier trade dress designs; (2) representing, suggesting in any fashion to any third party, or performing any act which might give rise to a belief that defendants or their goods are authorized or sponsored by plaintiffs; or (3) passing off, inducing, or enabling others to sell or pass off any goods as products produced by plaintiffs which are not in fact genuine Cartier goods or are not produced under the control and supervision of plaintiffs and approved by plaintiffs.

A copy of this report and recommendation will be sent by overnight mail for next day delivery or electronically to the parties on this date. Objections to the Report and Recommendation must be filed with the Clerk of Court, with a copy

to the Honorable Dora L. Irizarry and the undersigned, by March
30, 2009.  Failure to file objections within the time specified
waives the right to appeal.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R.
Civ. P. 72(b).

      **SO ORDERED.**


Dated:  Brooklyn, New York
        March 13, 2009


_____/s/_____
MARILYN D. GO
UNITED STATES MAGISTRATE JUDGE